First case this morning is People v. Samuels, and for the appellant is Ms. Vincent and for the athlete Mr. McNeil. Good morning. May it please the Court, Mr. McNeil. This case actually presents a fairly simple question, and that is how lethargic can the state be about bringing somebody to trial within the statutory speedy trial period and still maintain the conviction. Here, by all accounts, Jermaine Samuels was arrested on November 15, 2008. He was arraigned and charged. The information was filed. He was arraigned two days later on November 17. I think that was by video arraignment. I think that's how they do it in Livingston County. And bond was set. He never posted bond. He remained in state custody the entire time. And then at some point, it's unknown from the record when, some point prior to December 10th of 2008, the U.S. Marshals picked him up. And he remained in the Knox County Jail pursuant to the authority of the U.S. Federal Marshals and remained there apparently until he was then transferred to Terre Haute on September 17, 2009. Now the question here is what did the state attempt to do to secure his presence for trial in Livingston County within 120 days? Section 103-5 requires anyone who has not posted bond, their speedy trial rights automatically run and in the absence of any delays chargeable to the defendant, he's got to be tried within 120 days. It's the state's job, the state's duty to make sure that that trial occurs within the 120 days. It's not the defendant's job. And here the problem is that the state didn't really do anything to make sure that happened. What the record reflects is that the prosecutor at the December 31st hearing said, well, I talked to the assistant U.S. attorney and they said we can't have him. I don't know what to do. And that was pretty much the state's response throughout the entire time. I can't get him here. They won't let me have him. What can I do? Unfortunately, that's not really a very good answer for the 120-day requirement. And Stanitz is almost directly on point. Once he's in state custody, he remains in state custody, the speedy trial clock is run, and really all the cases appear to turn on the order of custody. If they're in federal custody first, then the 120 days doesn't run, then you've got to lodge a detainer on somebody if you want to get him back. Here, however, what the U.S. attorney had told the assistant state's attorney here to do was lodge a detainer, which really isn't going to help in the first instance because the IAD doesn't apply until they're in the penitentiary. So a detainer really wasn't going to help. However, a state writ will be honored by the U.S. Marshals, as I understand it. There is a procedure for doing it. It's fairly easy to find. For some reason, the state never even attempted to issue a writ until March 30, 2009. We don't know why from this record why that is. And in the absence of any information of why that is in this record, we can only assume that the state voluntarily relinquished custody of him on December 10, or somewhere before then, in 2008. And if they voluntarily relinquish that custody, then they are stuck with the consequences of that decision. And one of the consequences is you've got to try him with 120 days. The cases are fairly clear, standards and on back. If there's a voluntary relinquishment of custody, the state can't then say, well, he's in another county, we can't get him, the 120 days doesn't run. They don't get to have it both ways. And I wanted to say a few words about the constitutional right to a speedy trial. Here you've got 570, 572 days between arrest and trial. That would be presumptively prejudicial by any standard. There's only one continuance that could arguably be attributed to the defendant. Everything else is attributable to the state. After one continuance that was expressly agreed to by the defense, or I think actually he requested it, no further continuances were requested by the defense. The defense very clearly said we're asserting the right to trial, we're not agreeing to any more continuances. Presumptively prejudicial. I assume there are speedy trial rules that apply to the feds. Is there a bind here? The feds have a speedy trial obligation, the state has a speedy trial obligation, so you have to pick one charge or the other? The other charge is going to go away? I assume there might be a bind in certain situations. And I'm no expert on this. But it's my understanding that jurisdiction A has custody in the first instance, be it the state or the federal. Then another jurisdiction lodges an arrest warrant or a detainer or something. As I understand the federal procedure, for example, in this situation, if here Mr. Samuels was arrested by the state first, then the feds come. I understand that if they lodge a detainer, there's some sort of election provision. Now that's all I know. I don't know if that actually happened here. And in the absence of any information in this record, we can assume it didn't. So if there is a bind, there may be. But in the absence of any information of what, if anything, the state's attorney of Livingston County may have done to try to get him there, I find it very difficult to believe that two jurisdictions can't figure out some way to transfer temporary custody to somebody to resolve this problem. There are ways to do it. And like I say, in the absence of any information in this record that the Livingston County state's attorney took any steps to try to get him there, before March 30th of 2009, a silent record means it didn't happen. So all we know is that this Livingston County state's attorney did nothing from November 15th of 2008 until March 30th of 2009 to try to get him there, absent an email and a phone call. Did you ever file a written motion for this charge? No, he did not. And I know that that is something that the state brought up. And the statute does require a written motion. And it does say that in the absence of a written motion, the issue is waived. However, waiver is a limitation on the parties and not the court. There are plenty of cases, and I think some are cited in the brief, where these issues are reviewed on plain error, even in the absence of a written motion. And the court also has the option of reviewing for ineffective assistance for failing to file a written motion. So I'm not sure that the absence of a written motion is necessarily the death knell to this claim. Back to the constitutional right. The four things, the length of the delay, the reason for the delay, the assertion of the right, and the prejudice. Essentially it would be the same argument over again. The delay is 572 days. The reason is the state's attorney, for whatever reason, didn't try very hard to get him back from the federal marshals. There's really nothing in the record that we can point to that gives any indication that they tried really hard and it just didn't work. All, like I said, they did was a phone call, a letter, and an email. And the fact of the matter is, there is a tension probably between the state's statutory speedy trial right and what happens when they're in custody of several jurisdictions. The cases basically say that you go to who had him first. And in this case, clearly the state had him first. And the state should have asserted its right. And really it's the federal government that should have filed the detainer, not the state. What if the local state's attorney had gone in and asked the judge to release this fellow on bond? That would have solved the speedy trial problem, wouldn't it? It would have solved the 120-day speedy trial problem. You might get into a bit of an issue with good faith and that sort of thing. But if the defendant agrees to be released on bond, then yeah, I think, I'm trying to remember. The defendant has to agree to be released on bond? No. And I didn't mean, I was off on another track there. I mean, if he's released on bond and there's a bond order, I don't think the sheriff is going to keep him there regardless. I didn't mean to suggest that. What I'm saying is if it's a bond that the defendant can make. Well, no. And say the state's attorney says in post zero case. Yeah. Then that would presumably resolve at least the 120-day problem. The 103-5A problem. You've still got a 103-5B problem. But that would require in the first instance that the defendant file a written motion or in some other way assert his right to a speedy trial. Then you've got a 160-day problem. Simultaneous custody really doesn't work under 103-5E because those require two state jurisdictions. If you're talking about the federal jurisdiction, the only thing that's really going to work there is the IAD. And until he's in the federal penitentiary or state penitentiary and a detainer gets lodged at that point, 389 and 3810 aren't going to help. But presumably posting bond may be a solution to that problem. And if the court has no further questions, Mr. Samuels would ask this court to reverse the judgment of the Livingston County Circuit Court and discharge him. Thank you. Thank you, Mr. O'Neill. Mr. O'Neill, is it correct that this defendant is serving a life sentence in the federal penitentiary? That's correct. Why are we arguing about this? Obviously, one of the main points would be for a constitutional speedy trial violation. No, I'm talking about a practical matter. Are you saying why didn't the state concede? Well, no, my point is he's serving a life sentence in the federal penitentiary. Why does Livingston County care about this conviction? Well, I think that they wanted to make it clear that they tried to get the defendant released. From the federal authorities, starting from December 31, 2008, the second hearing in this case, that was the first contact with the federal authorities, the U.S. Attorney's Office. So a little bit over a month from when he was arrested was the first contact with the U.S. Attorney's Office. From that contact on, their position was consistent that they were not going to give him up until the federal matter was concluded. Also, I think it should be noted, and I think the record reflects that he was simultaneously arrested on the federal warrant and the state charges here, and arraigned by video feed. So it wasn't clear when he was taken into federal custody, but it was pretty soon after he was arrested. That much is clear. So this was kind of a confusing circumstance surrounding his arrest, state and federal charges both. So I think the Livingston County wants to make it clear that they weren't, as counsel put it, lethargic in trying to get the defendant back to Livingston County. The state would like to note that the defendant has waived his right to the speedy trial violation claim, as was noted, Section 114-1 requires both a written motion and the motion be within a reasonable amount of time after the arraignment. If the defendant is now claiming that he's been in state custody that whole time, this was over 18 months, and it was an oral motion made on the same day prior to trial starting. The Illinois Supreme Court in People v. Pearson has held that a violation of provisions of Section 103-5 is waived unless a motion for discharge is made prior to trial. Does Stannis help you? Does Stannis help me? I think that the inconsistent language in Stannis helps the state. They criticize another Second District case, People v. R. Sperry, which does specifically hold that the 120-day statutory period doesn't run when the defendant is in federal custody, and the defendant being in federal custody is an action caused or contributed by the defendant for the delay. R. Sperry cites People v. Newman, which also implicitly holds that the 120-day period doesn't run when the defendant is in federal custody. Stannis criticizes R. Sperry for, they say, confusing language. The word choice in R. Sperry, at least for the applicable holding, is a little confusing, but even Stannis comes to the same conclusion that, obviously, it holds that the 120-day statutory period doesn't run while the defendant is in federal custody. Also, in People v. Stannis, there was evidence that the defendant was voluntarily relinquished to federal authorities. The record in this case reflects the exact opposite. I think even at the very first hearing, although they didn't know the circumstances of federal authorities taking defendants, they said at least the state's position was that they had no choice in the matter. And from the moment they knew that, they tried to get him back from federal authorities. They filed multiple writs. The trial court filed writs. Nothing helped until, as the U.S. attorneys consistently told the state, the defendant wasn't brought back to Livingston County until the federal matter was concluded. I think the main thing to look at here, as far as the constitutional speedy trial factors, is that the defendant hasn't been prejudiced whatsoever. I think the factors they look at are, well, he would have been incarcerated on the federal charge anyway. Like I said, he was simultaneously arrested on the federal charge. They look at if he suffered any unneeded anxiety. Here, I think he was driving without insurance in possession of cannabis. Obviously, this was small potatoes compared to his federal charge, which resulted in a lifetime sentence. So I don't think there's any indication that he suffered any anxiety from this. And there's no indication or argument that his defense was impaired by this delay. I think the only thing the defendant argues is that the great length of the delay, which it was a long time, was presumptively prejudicial. But our Supreme Court in the People v. Kastner Act has found that although it could be presumptively prejudicial, a great length of delay doesn't automatically mean the defendant was prejudiced. I think that's also important when looking at the waiver. Any ineffective assistance of counsel or any plain error analysis would be rejected here because the defendant hasn't been prejudiced at all by him waiving his speedy trial right in this case. It should be noted on most of the occasions, the either orally or written defense counsel asserted his right to a speedy trial, but never did make the motion for dismissal. So, according to People v. Pearson, he has waived this argument. Also, in the defendant's reply brief, there's only two cases cited concerning a county jail's duty to hold an arrestee. Both of those are civil cases. Chicago Osteopathic v. City of Chicago and Smith v. Sheriff of Cook County. Chicago Osteopathic is a civil case where a hospital is trying to recover medical expenses for persons detained by the Chicago police. And Smith is a civil case brought by a prisoner for wrongfully imprisonment. Didn't Stanitz say there was a violation of the speedy trial right? Yes, but Stanitz also relied heavily on the fact that the state voluntarily admitted that they voluntarily relinquished authority to federal courts. Well, here the prosecutor said he didn't know. Isn't that right? The prosecutor said that they had no choice in the matter. The prosecutor stated, I don't think we had a choice. I think they just came and took him is kind of what my understanding of how it happened. The impression I get is that the local authorities didn't know what was going on. I think that it was a confusing set of circumstances because of his simultaneous arrest on a much more serious federal charge that may have resulted in federal authorities improperly or properly taking the defendant from Livingston County. Maybe federal authorities were under the impression that they arrested him first. As far as the waiver goes, the defense counsel was sort of in a bind here wasn't he? He didn't have much availability, much possibility of contacting the defendant. Well, true, but like I said he asserted his right to a speedy trial multiple times. So we ought to affirm and let it come back up on an ineffective assistance counsel? I don't think so because I don't think the defendant was prejudiced. I don't think you can show the prejudice prong of the ineffective assistance argument here. So you're abandoning the waiver argument? No. I'm saying that the plain error or ineffective assistance can't be argued because the defendant can't show any prejudice in this speedy trial. If we reverse on the basis of waiver, there's a pretty clear case of ineffective assistance counsel isn't there? I don't think so because I don't think the defendant has been prejudiced by counsel's performance. So what we ought to look at is not waiver but prejudice? Well, I think you'd have to go there by a waiver. Ineffective assistance counsel would be, the objectively unreasonable performance of counsel would be that he didn't file a written motion for dismissal based on the speedy trial violation. But although his performance may have been objectively unreasonable doing that, the defendant can't show prejudice by counsel's performance. Are there any other questions? Thank you. Rebuttal? Just a few brief remarks. The state keeps operating under the assumption that Mr. Samuels was arrested on the federal warrant at the same time. This record does not reflect that at all. What this record reflects is that when he was pulled over on the traffic stop, the arrest warrant showed up. But there is no evidence whatsoever that he was actually arrested on that federal warrant. What there is evidence of is he's arrested on the state charge and taken to the Livingston County Jail where he is booked on the state charge. And two days later he is charged and arraigned on the state charge. There is no evidence of when exactly the federal arrest warrant was executed. I guess at some point when the federal marshal showed up one can assume it was executed at that point. But there is no evidence that Trooper Ahrens executed that federal arrest warrant at the same time. They may have, but like I said before, if it's not in the record, it didn't happen. So I would be very leery of hanging my hat on simultaneous custody because there is no reflection of that. What there is a reflection of is he's in state custody as of November 15, 2008 period. There was some discussion here of Arsbery. The problem with Arsbery is, actually I think it was too cold. First of all, a lot of the continuances that happened before that particular defendant was in federal custody occurred under his own steam while he was in state custody. There was a motion for substitution, several continuances, etc., etc. There were three court dates within a month where he was apparently in federal custody for some reason. And the language is kind of flipped. And more to the point, there is no other case that stands for the proposition that the mere fact that you're in federal custody tolls your 120 days. So I would not be very comfortable resting on that one either. And Newman uses that case, cites it, but the problem in Newman, it's really not the same. In Newman, he was in federal custody first, awaiting federal sentencing before he was even arrested on the state charge. So for whatever Arsbery is worth, I don't think it's particularly helpful. I think Stamets is far more helpful in figuring out, for this court's purposes, Mr. Samuel's position. And finally, making the motion in a reasonable amount of time, the motion for discharge. There is an irony in the state complaining that Mr. Samuel's waited too long to make a motion for discharge when they didn't even get him to trial for 472 days. But more to the point, as I believe as Justice Cook pointed out, they didn't even bring him to his prelim until March. So I'm not exactly sure when defense counsel was supposed to consult with this client and determine if that was going to be what they were going to do. So while there were many delays, the vast majority of them, in fact almost all of them, were at the state's behest. And I don't think Mr. Samuel should be punished for that. Thank you. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next case.